UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Suzy Wells,<br><br>Plaintiff(s),<br><br>-vs-<br><br>Allergan USA, Inc. and Medicis Aesthetics, Inc.,<br><br>Defendant(s). | CASE NO.:  6:12-cv-03509-~~HMH~~  TMC<br><br><br>**AMENDED COMPLAINT** |

_____

Plaintiff, complaining of the Defendants herein, alleges that:

**JURISDICTION**

1.     Plaintiff is a resident and citizen of the State of South Carolina.

2.     Defendant Allergan USA, Inc., is a corporation duly organized and existing under the laws of the State of Delaware and maintains its principle place of business at 2525 Dupont Drive, Irvine, California. At times relevant to this action Allergan USA, Inc. was and is engaged in the business of manufacturing, designing, assembling, selling, and distributing medical aesthetic products, including Juvederm, with the reasonable expectation that said products would be used (implanted into individuals) in South Carolina where it was so used, and Defendant Allergan USA, Inc. conducted business in the State of South Carolina and generated substantial revenues in this state.

3.     Defendant Medicis Aesthetics, Inc. is a corporation organized and existing under the laws of State of Delaware with its principle place of business located at 7720 N. Dobson Road, Scottsdale, Arizona. At all times relevant to this action, Defendant Medicis Aesthetics, Inc. was and is engaged in the business of manufacturing, designing, assembling, selling and distributing medical

aesthetic products, including Restylane, with the reasonable expectation that said products would be used (implanted into individuals) in South Carolina, where it was so used, and Defendant Medicis Aesthetics, Inc. conducted business in the State of South Carolina and generated substantial revenues in this state.

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds $75,000.00, exclusive of interest and costs and the controversy, upon information and belief, exists between citizens of different states.

5.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a).

6.     Defendants' medical aesthetic products were implanted into the Plaintiff and by and through the negligence, carelessness, recklessness, willfulness and wantonness of the Defendants, jointly, severally or in the alternative, Plaintiff suffered an immune system reaction. The severe reaction to Defendants' products produced lesions in her lips and caused her to suffer symptoms similar to that of Lyme disease. Plaintiff was diagnosed with Lyme disease, however, her painful symptoms persisted. Plaintiff was eventually correctly diagnosed with an immune system reaction and underwent surgery to remove the lesions in her lips. As a result of the Defendants' negligence, carelessness, recklessness, willfulness and wantonness, Plaintiff sustained severe injuries and damages.

7.     Defendants are engaged in the business of selling medical aesthetic products and specifically Juvederm and Restylane sold to the Plaintiff and used by the Plaintiff and said products were defective and unreasonably dangerous and hazardous and unsafe for use.

8.     That the aforesaid medical aesthetic products expected to and did reach Plaintiff in substantially the same condition as it was at the time of sale and was also in the same condition at the

time of use by Plaintiff, and by reason thereof Defendants are strictly liable to the Plaintiff for damages resulting therefrom.

**CLAIMS FOR RELIEF**
**COUNT I**
**NEGLIGENCE**

9.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth and further alleges as follows:

10.     Defendants were negligent in the design, manufacture, assembly, testing, inspection, provision with warnings and instructions, marketing, distribution, promotion, advertising, labeling, and sale of Juvederm and Restylane, which rendered both products defective and unreasonably dangerous.

11.     Juvederm and Restylane were defective and unreasonably dangerous in the following respects:

 a. Defendants failed to use due care in the designing, testing, and manufacturing of Juvederm and/or Restylane so as to prevent the aforementioned risks to individuals when Juvederm and/or Restylane was used;

 b. failed to accompany their product with proper and adequate warnings regarding all possible adverse side effects associated with the use of Juvederm and/or Restylane and the frequency, comparative severity and duration of such adverse effects;

 c. failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Juvederm and/or Restylane;

 d. failed to provide adequate training and information to medical care providers for the appropriate use of Juvederm and/or Restylane;

 e. failed to properly and adequately warn Suzy Wells, prior to actively encouraging and promoting the sale of Juvederm and/or Restylane, either directly or indirectly, orally or in writing, about the adverse side effects associated with the use of this product including but not limited to immune system reaction; and

 f. asserted that it was safe for Suzy Wells to continue her use of Juvederm and/or Restylane;

 g. failed to inform  Juvederm and/or Restylane users and potential Juvederm and/or Restylane users, who saw or received literature regarding the products that Suzy Wells

was at risk of developing an immune system reaction and therefore Juvederm and/or Restylane was not appropriate for her to use.

h. were otherwise careless and/or negligent.

12. By containing these defects, the Juvederm and Restylane failed to comply with and operate in terms of their Pre-Market Approval from the Food & Drug Administration, approved in FDA Applications P050047 and P020023, as well as all other relevant supplemental applications.

13. The negligent, careless, wrongful, and unlawful acts of the Defendants were the cause-in-fact and proximate cause of the injuries suffered by the Plaintiff and the Plaintiff's damages, for which the Plaintiff demands complete and adequate compensation in an amount left to the discretion of the jury, including the following items:

a. Physical and mental pain and suffering of the Plaintiff;

b. Mental anguish of the Plaintiff;

c. Emotional distress of the Plaintiff;

d. Loss of past earnings and earning capacity of the Plaintiff;

e. Past and future medical bills, hospital bills, and other related expenses of the Plaintiff; and,

f. Consequential and other related damages of the Plaintiff.

**COUNT II**
**STRICT LIABILITY IN TORT**

14. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth and further alleges as follows:

15. Defendants designed, manufactured, assembled, tested, inspected, provided with warnings and instructions, marketed, and distributed Juvederm and Restylane, such that when the Juvederm and Restylane were placed into the stream of commerce, they were in an unreasonably dangerous and inherently defective condition as identified in Paragraph 11 and 12 above, thereby

rendering the Defendants strictly liable for the resulting injuries and damages.

16. By containing these defects, Juvederm and Restylane failed to comply with and operate in terms of their Pre-Market Approval from the Food & Drug Administration, approved in FDA Applications P050047 and P020023, as well as all other relevant supplemental applications.

17. The defective nature of Juvederm and Restylane, described in Paragraphs 6 and 11 above, was the cause-in-fact and proximate cause of the injuries and damages of the Plaintiff as identified in Paragraph 13 above.

**COUNT III**
**BREACH OF WARRANTY**

18. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth and further alleges as follows:

19. At all times relevant to this action, the Defendants are and were merchants in the business of designing, manufacturing, assembling, testing, inspecting, providing with warnings and instructions, marketing, and distributing Juvederm and Restylane.

20. Defendants impliedly and expressly warranted that Juvederm and Restylane were of merchantable quality and further warranted the safety of the products for their usual and intended purpose.

21. By designing, manufacturing, assembling, testing, inspecting, providing with warnings and instructions, marketing, distributing, and/or otherwise placing Juvederm and Restylane into the stream of commerce in a condition in which they were defective and unreasonably dangerous as identified in Paragraph 11 above, unmerchantable, unfit for its ordinary and intended purpose, Defendants, contrary to the terms of Juvederm and Restylane' Pre-Market Approval, breached these express and implied warranties.  By containing these defects, Juvederm and Restylane failed to comply with and operate in terms of their Pre-Market Approval from the Food & Drug Administration,

approved by the FDA Application P050047 and P 020023, as well as all other relevant supplemental applications.

22.     These breaches of warranty by Defendants were the cause-in-fact and proximate cause of the injuries suffered by the Plaintiff, as well as the damages identified in Paragraph 13 above.

**COUNT IV**
**UNFAIR TRADE PRACTICES**

23.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth and further alleges as follows:

24.     At all relevant times, Defendants were each a "person" defined to include "corporations . . . partnerships, incorporated or unincorporated associations and any other legality" engaged in "trade" and "commerce" within the state of South Carolina pursuant to S.C. Code Ann § 39-5-10.

25.     The sale of adulterated medical devices to consumers, including the Plaintiff, or to their treating physicians, directly constitutes an unfair or deceptive act or practice in the conduct of trade or commerce pursuant to S.C. Code Ann. § 39-5-20(a).

26.     Further, Defendants knew of the defective, non-conforming, and adulterated nature of Juvederm and Restylane, but made no attempt to recall the affected products or adequately warn patients and their treating physicians.

27.     Defendants' acts impact the public interest in that Defendants' acts of manufacturing, marketing, distributing, and selling adulterated medical devices throughout the State of South Carolina creates a significant risk of injury, death, and severe economic injury to the citizens of this jurisdiction.

28.     Defendants' acts are further capable of repetition in that Defendants are currently engaged in the manufacture, distribution, and sale of numerous product lines of medical aesthetic products.

29.     Defendants' acts in carrying out unfair trade practices failed to comply with and operate in terms of their Pre-Market Approval from the Food & Drug Administration, approved in FDA Applications P050047 and P020023, as well as all other relevant supplemental applications.

30.     The injuries suffered by the Plaintiff were the cause-in-fact and proximate cause of the injuries suffered by the Plaintiff, as well as the damages identified in Paragraph 12 above.

31.     Defendants' unfair and deceptive trade practices have severely damaged the Plaintiff, and the Plaintiff is therefore entitled to treble damages and attorney fees pursuant to the South Carolina Unfair Trade Practices Act.

**COUNT V**
**NEGLIGENT MISREPRESENTATION**

32.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth and further alleges as follows:

33.     Defendants had a duty to communicate accurate information regarding the safety and quality of Juvederm and Restylane to the general public and the Plaintiff.  These statements of quality included statements regarding whether Juvederm and Restylane were in compliance with the standards approved by the FDA in Approvals P050047 and  P020023.

34.     Defendants further had a pecuniary interest in making statements regarding the safety, quality, and compliance with FDA standards of its products, in that Defendants could not successfully and profitably manufacture, distribute, and sell its products without making these representations.

35.     Because the Defendants' products pose significant risks of injury or death in the event it is not manufactured in accordance with the standards previously approved by the FDA, Defendants owed a duty of care to the Plaintiff to see that truthful information was communicated to her regarding the safety, quality, and compliance of its products with FDA approved standards.

36.     Defendants breached their duty of care to Plaintiff by failing to apprise Plaintiff that the

products used on her were not in compliance with the standards approved by the FDA in Approvals P050047 and P020023.

37.    Plaintiff justifiably relied on Defendants' representations that the products used on her were manufactured and sold in compliance with the standards approved by the FDA in Approvals P050047 and P020023.

38.    Plaintiff suffered a pecuniary loss, to include medical bills and economic damages, as a direct and proximate result of her reliance on Defendants' representations regarding their products.

39.    By reason of the foregoing, Defendants are liable for the injuries suffered by the Plaintiff and thus the Plaintiff is entitled to an award of actual and consequential damages.

## COUNT VI
## NEGLIGENCE – POST-MANUFACTURE FAILURE TO WARN

40.    Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth and further alleges as follows:

41.    Defendants manufactured, marketed, distributed, sold, and/or delivered products throughout South Carolina and to the Plaintiff.

42.    Defendants' products were defective and unreasonably dangerous in that:

a.    the products did not meet the manufacturing specifications approved by the FDA in Approvals P050047 and P020023; and,

b.    Juvederm and Restylane were sold with materials that were not free from manufacturing defects and/or nonconformities;

c.    Juvederm and Restylane were adulterated in violation of 21 U.S.C. § 351(h).

43.    Furthermore, upon information and belief, these products experienced an unusually high incidence of injuries caused by the manufacturing errors.

44.    Defendant had prior knowledge and information as to the defective and unreasonably

dangerous nature of Juvederm and Restylane, as well as the high incidence of related injuries associated with Juvederm and Restylane. This knowledge was acquired by Defendants prior to the date that Plaintiff received her injuries.

45. Defendants had a duty to exercise due care to warn patients who had been injected with Juvederm and Restylane and to warn the treating physicians of patients injected with Juvederm and Restylane of the risks associated with the use of this product.

46. Despite Defendants' knowledge of the defective and unreasonably dangerous nature of Juvederm and Restylane and knowledge of the high incidence of related injuries associated with these leads, Defendants failed to issue a post-manufacture warning to the Plaintiff and Plaintiff's treating physicians warning of the high incidence of related injuries as well as the defective and unreasonably dangerous nature of these products.

47 . Defendants' failure to provide adequate post-manufacture warnings to the Plaintiff and the Plaintiff's treating physicians regarding the risks associated with Juvederm and Restylane prevented the Plaintiff and her treating physicians from taking adequate measures to guard against these risks. The measures which would have been taken to guard against these risks include vigilant monitoring of the Plaintiff's condition as well as the replacement of these products. These preventative measures would have prevented the Plaintiff's injuries.

WHEREFORE, the Plaintiff prays for relief as follows:

a. For general and compensatory damages including, but not limited to, pain and suffering, mental anguish, and emotional distress;

b. Medical and incidental expenses according to proof;

c. Loss of past earnings and earning capacity;

d. Consequential damages;

e. Punitive and exemplary damages;

f. Such further relief as this Court deems necessary, just and proper.

A TRIAL BY JURY IS HEREBY DEMANDED.


Respectfully submitted:


s/William A. Jordan
Jordan Law Center
622 Wade Hampton Blvd.   (29609)
PO Box 1687
Greenville, South Carolina 29602
(864) 235-0147
williamjordanlaw@gmail.com


Date: August 6, 2013

Greenville, South Carolina